on behalf of Lomando Scott. I'd like to reserve two minutes for rebuttal. I plan to focus my argument today on three related issues. First, whether the district court properly admitted evidence of Mr. Scott's 1994 conviction under Rule 404B. Second, whether the prosecutor's improper argument regarding that conviction was harmless, and in particular, whether it was harmless with respect to the 924C charge, which was the possession of a gun and further inch charge. And then finally, whether there was sufficient evidence to sustain the 924C charge. And the reason I'm focusing so much on the 924C charge is because, as this Court knows, that charge subjected Mr. Scott to an additional 25 years in prison, and it was one of the sole contested issues at trial. Despite it being such a critical issue, though, the jury received an improper instruction on that charge and one that lessened the government's burden of proof. The 1994 conviction was substantially more prejudicial than probative. The State argued, when it asked to admit this prior conviction, that it should come in as proof of intent and knowledge. It argued that the conviction was relevant as to intent with respect to the drug conviction or, excuse me, the possession with intent to sell charges and knowledge with respect to both of the gun charges. But the State never actually -- And the knowledge of what? Well, that's actually the question. It was sort of knowledge that he possessed the gun or knowledge that the gun was in his car. But the State never actually said how that prior 924C charge, the 1994 charge, was really related to the charges here. And I think that's especially salient when you look at how the prosecutor actually argued about that prior charge, because in her argument, she essentially said he did it before, so he did it again, right? That a leper doesn't -- Clearly, that was improper. The government has agreed that it was improper. It was blatantly improper. The judge, however, caught it and was pretty, I mean, discursive about it. I mean, it wasn't like a pro forma instruction. So what about that? There's two responses to that. And the first is that the improper argument had gone on for quite some time before he made that instruction. And the second response to that is that with respect to the 924C charge, there was very little evidence on that charge. The government and actually the court as well both misunderstood what the State – what the government's burden was. If you look at the discussion during the motion for judgment of acquittal, you see the State actually say, we don't have to prove it was in furtherance, when in fact that was exactly what the State had to prove. And you see the judge also say, well, I think that there was evidence of knowledge. So there was very little evidence on that charge. And so even then, I think, with respect to that particular charge, a curative instruction was not enough given the very little evidence the government submitted on that charge. Another reason that this conviction – that the prior conviction really wasn't probative was because the defendant had already admitted that the crack cocaine was his. It was really uncontested that the car was his. The car was registered to his. He had admitted that it was his house. So the idea that he didn't know that the gun was there, that wasn't something that was argued to the jury. And at a minimum – He said that he knew the drugs were there. Did he say he knew the gun was there? He didn't say anything about the gun. But it was – but there was a lot of evidence, a lot of testimony about the fact that he was gathering things from the house and the car. He was repeatedly – you know, he's gathering his clothes. He's gathering what the government characterizes as his most valuable possessions and putting them in his car. So no, he never said anything about the gun. And in fact, it looks like he was never questioned about the gun. At a minimum, though, the district court should have limited the testimony about the prior conviction. Instead of just saying he has this prior conviction, the district court allowed an officer to testify that he had come – Mr. Scott had come to the door with a gun. And again, this was from 16 years earlier. He'd come to the door with a gun, that it was very volatile, that the officer remembered it so well because it was so unusual and dangerous. And the government, again, has never articulated a basis why that particular testimony was relevant to this case, why the jury needed to know that in a prior case, Mr. Scott had carried a gun. And again, I think that distinction is relevant because, as this Court knows, Section 924C can be violated in two different ways. It can be the use or carrying of a gun during a crime, or it can be possession in furtherance. The prior conviction was about carrying the gun. But the one here, despite some of the back and forth, there was no allegation that he carried the gun. The government repeatedly argued that it was a constructive possession case. So here the allegation was that he possessed the gun in furtherance of – well, they didn't quite make that argument, but that's what they would have had to prove, that he possessed the gun in furtherance of the drug trafficking charge. Why wouldn't it counsel in terms of assessing whether the gun was being used in furtherance of the crime to be able to say, well, clearly he intended to use this gun to further the crime, because in the past, you know, there's two explanations. One could be he's a gun collector, and then he's getting the stuff out of the apartment and he throws stuff into a pillowcase and runs down, or that his intent is he's actually a drug dealer and he's intending to use this gun to further his crime of drug trafficking. Why couldn't the court admit it for that purpose? Well, I think it would have – it certainly would have had some relevance to that purpose. But the question isn't whether it just had some relevance. The question would be, given its age, given the prejudicial facts that they admitted about the conviction, whether the district court properly admitted that. So certainly there's a more persuasive argument that the district court was proper to just admit the fact that the court went much further than that. There was this extensive testimony, substantial testimony about the fact that the officer remembered it, even though it was so long ago, because he had been carrying a gun and it was volatile. And, again, the government has never articulated a basis why that particular evidence would have been relevant to this charge.  were actually erroneous. You're not challenging that as such, are you? Your Honor, the instructions were erroneous, and I appreciate the government pointing that out. I was assigned to this case when I entered my appearance roughly two weeks ago, and it became clear to me that we should have briefed that issue. I think it might help this court to have supplemental briefing on this issue, because I don't think that this court can determine harmlessness without considering that the instruction was improper. I don't think that this court can consider sufficient evidence without considering that the instruction was improper, because when you ask the question, well, how could the jury have convicted on this charge, they didn't. They convicted on something less, because the instruction was wrong. So not only did the jury not find this, it wasn't asked to find this. But you're right, Your Honor, that we did not raise as a claim that the jury instruction was wrong, even though the government has conceded, and there's case law exactly on this point, that it was, in fact, wrong and that it lessens the gun. But didn't concede harmlessness, and we really don't have any briefing on the harmlessness. There's no briefing on harmlessness, and I do think it would assist this court to have additional briefing that would address. But it could, I suppose, be relevant to the harmlessness with regard to the other issues. Absolutely. And I think it's also very relevant to the sufficiency of the evidence in the 924 statute. What tells you about the sufficiency of the evidence? The evidence was essentially that he was being evicted and that he's moving his stuff from his house to his car. And the officers testify, yeah, he's carrying a bunch of things, everyone's testifying there's a bunch of trips back and forth. And everyone's also testifying that he's, you know, he's agitated, he's upset, he's rushed, because when he got to the house, when they came to evict him, he said he didn't understand he was being evicted. He didn't know, he hadn't packed up any of his things, and he negotiated eventually for real. Let me give you sort of two scenarios that seem plausible to me. One is that the gun and the drugs are in the same place in the house, and he's simply gone with his pillowcase, gone up, picked up things that are in the same place and put them together. That would suggest that he possessed an infuriance of. Whether he possesses an infuriance of, and the possession is in the car where he's going to, from which he's going to continue to distribute these drugs since he no longer has an apartment, or that he possessed them in the apartment at the time, and he possessed the gun with the, together with the drugs. The other possibility is that he, that the drugs and the gun were in different places, which would be very favorable to you if he, if you could have established that, if they had found the drugs in the apartment and the gun in another place in the apartment. But that suggests, then, that he went from where he picked up the drugs to where he had the gun and put them together, and did so very deliberately, because there was nothing else in that pillowcase other than the drugs and the gun, correct? I would agree with you, except for the, when you said he put the guns and the drugs together deliberately. Well, I'm assuming that they were in different, I'm assuming, willing to assume, for the purposes of the hypothetical, that they are in different places in the apartment, a fact which, again, if they had been inspecting the apartment, might have been very favorable to you. But by the time they get to the car, he's gone, that means he's gone deliberately to two places to put things together, and he didn't put anything else. He didn't take his dirty laundry, he didn't pick up the silverware, he didn't put anything else in that pillowcase, only the drugs and the gun. So why isn't that possession in furtherance of, since he's obviously, these are drugs for distribution, not for personal use, he intends to use them in the future, and he's now got a gun in the same place with him? I see I just have 10 seconds left. Can I respond to your question? Oh, please. What the courts look for is strategic location of the guns, of a gun near drugs, near drug paraphernalia. So what you see in these cases is, you know, one case where the guns, the drug, and the defendant were all on, the defendant was on the mattress, the drugs were underneath the mattress, they're all together, and they're all together so that when he's doing his drug dealing, this drug dealer could quickly reach his gun if something went wrong. But all you have here is an allegation that all the drugs were in the kitchen, and most of the testimony that he was taking stuff from his bedroom. So actually, there is testimony that it looks like it did come, as you said, from a different location. Well, again, that might be really helpful if the officers had had a warrant for searching the apartment and had found the drugs in one place and the gun in another room. But they didn't. They found it in the car, and they found it in the same pillowcase, and there was nothing else there, which means either they came from the same place when he was taking stuff off the counters or out of the drawers, or that he quite deliberately and consciously went from one place in the apartment to another place in the apartment to put the guns and the drugs in the same pillowcase and not anything else. Well, it... So at the time that they find the drugs and find that he possesses the drugs, it's not possession of the drugs in an apartment from which he's dealing the drugs. It's possession of drugs in a car from which he is going to continue his distribution, and the gun is in the same place. Well, but there's also his TV, there's also tons of clothes... Not in the pillowcase. But in the car. In the car. In the car. By the way, is it a pillow or a pillowcase? It's a pillow. It's a pillow, Your Honor. So it's a pillow, and there was some testimony that was unclear, but it was actually a pillow that had the crack and the guns thrown in it. And I think the point is... Well, that seems to me to be much less favorable for you, because if it's a pillow, that suggests he wasn't throwing anything in anything as he was running out. It suggests that he had put it there to begin with to hide it, and he was just picking up the pillow with the stuff in it that had been in it. I mean, people don't usually throw things inside pillows as they're running out a door. Not usually, but in this circumstance where he has no boxes, he doesn't have anything, he has no... What do you mean by in a pillow? You mean there was a pillowcase on top of a pillow and he put it inside, between the pillowcase and the pillow? So there was a pillow that had a pillowcase on it, and the gun and the crack were in that pillow, in the pillowcase with the pillow. Not inside the pillow. Not inside the pillow, no. Just in the pillowcase. So he had nothing to pack with, because again, he didn't know he was being evicted. So he's carrying bundles, and there's tons of testimony about this. And I know that I'm well over my time, so I would just conclude there. Thank you very much.  Yes, sir. Peter Levitt for the United States. It's important at the outset to note the procedural posture of the objections, the present objections to the jury instructions. The defendant has waived the ability to challenge those by expressly agreeing at excerpts of record to the propriety of the jury instruction that was ultimately given at excerpts of record. Well, yes, but that still leaves the question whether in judging harmlessness and in judging the sufficiency question, we do it against the right standard or the wrong standard? Presumably the right standard. Correct. All right. We don't take into account that, in fact, the jury had a lesser standard. Somewhat lesser. I mean, I find the difference a little ephemeral, but somewhat. The case law seems to say it's a little lesser. I agree with Your Honor's characterization, and I would point out that the jury instruction as given, considering all the evidence in the light most favorable to the government as it has to be under Jackson v. Virginia, amply supports the 924C. I'm saying you don't look at the instruction as given. You look to the actual requirements of the statute. Do you agree with that? Yes. Okay. And I believe the evidence as it is viewed in the light most favorable satisfies the statutory requirements. You just said the opposite, but go ahead. I withdraw my first representation and go with the second. The drugs are in the same pillow case as the drug, as the gun. He admits he's a drug dealer. All right. Let me ask you two things. First of all, or let me just tell you two things that I found outrageous. Did you prosecute this case? No, Your Honor. All right. Well, that's good, because there are two things that I find really quite outrageous. One is the Scarface thing, which may, you know, not have all that much to do with it, but why you would ever do such a thing and think it was permissible, I don't know. And the prosecutor's statements on the prior were, I've never seen it before, it was outrageous, and I don't know what to do with it because it was so outrageous. Even though there was an instruction. Did Your Honor have a preference as to which I should respond to first? Yes. No, I don't. I'm just telling you that my view of this case is there were two completely outrageous things done, but there's a significant harmless error question and there's the instruction given by the judge, and what do I do with that? The answer to the last question is affirm. I agree with Your Honor's characterization that there was an error and we admit there was an error with regard to the closing argument. There was. Outrageous error. Since we all know from, you know, as legal puppies that you don't do that. Your Honor. Certainly not twice. Right. Your Honors are correct. You are correct. We are grateful to the district court for intervening promptly and comprehensively, not in a pro forma manner, but in a careful, discursive manner in joining the jurors and I want to repeat that again, this may be considered only as it bears on knowledge intent, absence of mistake, modus operandi, and not for any other purpose. And what do you think the jurors think that means? Other than, I mean, what do they think lawlessness intent means? I mean, it's a fine cut thing and when this is happening and the judge says something sort of, he tried, he did try, but it was still a pro forma set of instructions. And what were they going to take away from it? But that's just it, Your Honor. The judge continued after giving that curative instruction with the following curative instruction. I don't want the argument of counsel to be considered by you as a suggestion that because he has engaged in or been convicted of conduct previously that he must have done it here. Well, yes, they say, well, it doesn't mean he must have, but it means he was much more likely to, which is what he was being told. I believe at this point, Your Honor and I may be talking not about the particular curative instruction here, but in the risk that inheres with any 404B situation. I guess what I'm asking is, is there a point of egregiousness in the prosecutorial misuse of this information? That despite all the case law about how we assume that jurors follow instructions, that it's gone over the top? Yes, Your Honor. I would agree as a general proposition that there is a point where such arguments can be said to be incurable. You know, I wouldn't have indicted this had I not known he's guilty. That's the end of the story. Put yourself in their shoes. That's the end of the story. This, however, was an error. We admit it was an error. We're grateful to the district court for correcting that error as timely and comprehensively as he did. And all of this is, as the precedent requires, viewed against the backdrop of, frankly, overwhelming evidence in terms of assessing its harmlessness. It's not overwhelming. It may be good enough, but it's certainly not overwhelming. On the gun charge. I believe respectfully, Your Honor, that it is, that it's in the same place. This is a previously convicted felon. Drug dealing is a cash-only business. If you get ripped off for your narcotics, you can't file a police report. You have to pull out your gun and take matters. But that's essentially saying that any, I mean, what you're saying is that any person who has drugs in a gun is guilty. Not. Quite. Pretty quite, though. Pretty quite. Okay. I'll go with pretty quite. With regard to Scarface, again, we have a situation where this was a mere bit. A circumstantial. Yeah, but you defended that in your brief, and I don't, I thought that was reprehensible itself. There's no way that this could have been appropriate. I mean, all kinds of people have all kinds of violent posters up in their rooms. What does it prove? Nothing. And it's a First Amendment problem. But, Your Honor, setting aside the First Amendment problem for the time being, innocent people have beakers. Innocent people have baggies. Yes, but these are, but those are functional things. And if you have a bunch of them, which this guy did, that's one thing. But this is not functional in any way. It's an attribution to his character, essentially, from the fact that he likes a certain movie. It's just beyond the panel, in my view. I understand Your Honor's concern with the introduction of this evidence. I would reiterate, as argued in the answering brief, that the solitary objection, there was no objection to the picture of the poster. The solitary contemporaneous objection was based on relevancy to Shipworth's testimony regarding it. And the district court concluded that it was probative of knowledge and intent, and that it could therefore, the agent could be permitted to opine very briefly on the significance of this. It was a, it was a situation where the officer explained it's about a guy who was a, who rose to the top, and he's somewhat of a hero to drug traffickers. It occupies a very small, I won't say de minimis, position within the context of the overall trial fabric. Was there any pretrial litigation about that poster? I do not believe so, Your Honor. I believe most of the pretrial proceedings were wrapped up in the motion to suppress that form the basis of the first appeal. Sure, but there wasn't, for example, the government didn't move and eliminate or try to get that poster in? I believe the answer is no, Your Honor, but I am not certain. For all of the reasons, therefore, set forth in the answering brief and is set forth here today, we would urge this Court to affirm the judgment of conviction. Thank you very much. Thank you. I'll give you a minute, Rebecca. Thank you. To answer Judge Owen's question, the Scarface poster was not litigated pretrial. I just want to reemphasize that there was the misconduct with respect to the Scarface poster, there was the misconduct with respect to the closing argument, and then there was the improper admission of at least the facts surrounding the prior conviction. And all of those three things work together to encourage the jury to convict Mr. Scott simply because he'd done it before. And whatever you say with respect to the other accounts, I don't think there's any argument that the evidence on the 924C charge was overwhelming. And in fact, the Court, when he was the district court judge, when he was looking at the motion for judgment of acquittal, he himself said there was no direct evidence, because there wasn't. There was no direct evidence on this charge. And for that reason, we would ask this Court to reverse the district court. Thank you very much. Thank you, Counsel. The case of United States v. Scott is submitted. We will go to Oster v. County of Solano.
judges: Berzon, Bybee, Owens